IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| AMY S. DESILETS, ) | C/A No. 2:14-cv-01693-RBH-MGB |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Amy Desilets, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on her May 18, 2011 application for Disability Insurance Benefits ("DIB") and her May 2, 2011 application for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). See Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).

**Procedural History and ALJ's Findings**

The Plaintiff was born April 27, 1986, and was 24 years old on the alleged onset of disability date, August 1, 2010. (R 160.) The Plaintiff filed for DIB and SSI benefits on May 18, 2011, and May 2, 2011, respectively. (R. 147.) The Plaintiff was denied benefits on her initial claim and her request for reconsideration. (Id.) The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on July 24, 2012. (R. 157) The ALJ made a finding the Plaintiff was not disabled on September, 24, 2012, and the Plaintiff

appealed the decision to the Appeals Council ("AC"). (R. 147-56.) The AC denied her appeal. (R. 1-7.) This case followed.

The ALJ's decision is now the Commissioner's final action for purposes of judicial review. In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ's September, 24, 2012 Decision (R. 147-56.):

> (1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
>
> (2) The claimant has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3) The claimant has the following severe impairments: disorders of the spine and status-post repair of calcaneal fracture with chronic pain, Erb's palsy, bipolar disorder, anxiety, and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for six hours in an 8-hour day, and stand and walk occasionally with a sit/stand option at a workstation. The Plaintiff is limited to performing simple, repetitive tasks in a low stress setting defined as requiring no major decision-making or changes in the work setting. She is also restricted from interacting with the general public.
>
> (6) The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on April 27, 1986, and was 16 years old, which is defined as younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[1]

---

[1] The ALJ incorrectly stated the Plaintiff was 16 years old on the alleged onset date of August 1, 2010. The Plaintiff was 24 years old on the alleged onset date. The ALJ properly categorized

    (8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416-964).

    (9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    (10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    (11)    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **Applicable Law**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[2]

---

the Plaintiff as a "younger individual age 18-44." Therefore the error stating she was 16 is harmless.

[2] "[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, C/A No. 9:12-CV-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing Emberlin v. Astrue, C/A No. 06-CV-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which

prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Analysis**

After consideration of the record as a whole, the undersigned finds that the ALJ's decision is supported by substantial evidence and recommends the Commissioner's decision be affirmed.

### 1. Consideration of Additional Evidence

The Plaintiff argues that the ALJ did not meet his burden of developing the record by failing to obtain further evidence from the Plaintiff's treating sources. (Dkt. No. 15.) In the alternative, the Plaintiff argues that the AC did not properly consider the evidence submitted to it after the ALJ's decision. (Id.) This court does not agree.

The ALJ met his burden of developing the record. The Plaintiff argues an ALJ is obligated to try to obtain medical evidence from treating sources when the record is insufficient or inconsistent. (Dkt. No. 15.) The Plaintiff then argues that if evidence from a treating source is inadequate, the ALJ must "re-contact the treating source." (Dkt. No. 15 at 19.) In making these arguments the Plaintiff cites 42 U.S.C. § 423(d)(5)(B), 20 CFR § 404.1512(e), 20 CFR § 404.1519a, and 20 CFR § 404.1519h. The court has reviewed the statutes and regulations cited by the Plaintiff and find they do not support the Plaintiff's argument. These citations taken together do show that the regulatory scheme governing social security favors treating sources and that the Social Security Administration must make reasonable effort to obtain examinations from treating sources in certain circumstances. However, the Plaintiff ignores other sections of the regulations she cites such as 20 C.F.R. § 404.1512(a), which states the following:

> In general, you have to prove to us that you are…disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

The Plaintiff notes that the ALJ acknowledged at the hearing that "the medical evidence is not 100 [percent] clear as to how [her impairments] limit her ability to work." (Dkt. No. 15 (quoting R. 175.)) This comment does not indicate that the medical evidence was inconsistent or

insufficient. The ALJ's comment reflects his finding that the medical evidence did not support a residual functional capacity ("RFC") assessment that would lead to a finding she is disabled. (R. 151-156.) The Plaintiff's arguments overstate the burden the ALJ had to obtain evidence. The burden to prove disability is on the Plaintiff. As to the Plaintiff's argument that this case should be remanded because the ALJ did not sufficiently obtain evidence from the treating sources, this court recommends that the ALJ's decision be affirmed.

The evidence submitted to the AC by the Plaintiff was neither new nor material and the AC did not err in affirming the ALJ's decision in light of the new evidence. A claimant may submit additional evidence to be considered by the AC after a decision by the ALJ. 20 C.F.R. §§ 404.970, 416.1470. The AC is required to consider the new and material evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." Id. The AC must review the new and material evidence along with the record as a whole. Id. The AC "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id. In order to be "new" evidence, the evidence must not be "duplicative or cumulative"; and in order to be "material," there must be a "reasonable possibility that [it] would have changed the outcome." Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

The Plaintiff submitted substantial amounts of new evidence to the AC. (R. 1-2.) The AC considered the vocational rehabilitation records, SCDMV handicap placards, and many medical records dating up to the time of the ALJ's decision. (Id.) The AC did not consider the Plaintiff's school records concerning her disability, SCDMV handicap placards, and some medical records. (R. 2.) The evidence the AC did not consider concerned the time period after the ALJ's decision. (R. 2.)

After reviewing all of the new evidence submitted to the AC, this court finds that it was neither new nor material under Wilkins.  The Plaintiff only cites to one piece of additional evidence that the AC considered.  The Plaintiff cites the office notes of Shailesh Patel, M.D., from his examination of the Plaintiff on July 17, 2012.  (R. 1062-63.)  These notes reveal Plaintiff was in a wheelchair, but do not give any support or explanation for its necessity.  (Id.)  The notes state that the MRI of her back showed "minimal pathology" and physical therapy was ordered.  (Id.)  In a subsequent visit to Dr. Patel on November 7, 2012, the notes reveal her lumbar spine pain and cervical spine pain were "mild." (R. 1057.)  The pain is described to Dr. Patel by the Plaintiff as worsening with activity, but "is not bothersome if she lays still."  (Id.)  Again Dr. Patel noted her MRI of her back "did not show pathology that would warrant a steroid injection."  (Id.)  Dr. Patel's notes do not contain any information that was not already before the ALJ, and they are not likely to change the outcome of the ALJ's decision.  The additional evidence considered by the AC that the Plaintiff does not cite does not reveal anything new or material either.[3]

The remaining additional evidence cited by the Plaintiff dates from after the ALJ's decision.  (Dkt. No. 15 at 19.)  None of this evidence was considered by the AC.  (R. 2.)  The Plaintiff argues that the AC improperly failed to consider the Plaintiff's handicap placards from the SCDMV.  (Id.)  This evidence was cumulative as the AC did review the Plaintiff's handicap placards that predated the ALJ's decision.  (R. 2.)  The Plaintiff argues that evidence her school allowed her extra time to take tests is new and material. (Dkt. No. 15 at 19.)  The school did not allow extra time on tests until after the ALJ's decision.  This court finds that such evidence does not have a "reasonable possibility" of changing the outcome. Wilkins, 953 F.2d at 96.

---

[3] Diagnostic testing of her conditions by her treating physicians found "normal alignment of lumbar spin[e]," "normal alignment of cervical spi[ne]," normal "vertebral body alignment," "no frank disc herniation," and no "spinal canal stenosis." (R. 71-72,100-101.)

Additionally, it does not "relate[] to the period on or before the date of the administrative law judge hearing decision" 20 C.F.R. §§ 404.970, 416.1470.  After reviewing all of the evidence in this case including the additional evidence submitted to the AC, this court finds that the ALJ's decision and the record are complete and in proper order allowing for judicial review.  The AC properly examined some of the additional evidence and disregarded the evidence that did not comply with 20 C.F.R. §§ 404.970, 416.1470.  Therefore, this court recommends the ALJ's decision be affirmed.

### 2. The ALJ's Determination of Severe Impairments

Substantial evidence supports the ALJ's determination of the Plaintiff's severe impairments in Step Two of the sequential process, and this court recommends the ALJ's decision be affirmed.  The ALJ found the Plaintiff to have "disorders of the spine and status-post repair of calcaneal fracture with chronic pain, Erb's palsy,[4] bipolar disorder, anxiety, and attention deficit hyperactivity disorder."  (R. 149.)  A severe impairment is one that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20

---

[4] Erb's Palsy is "a permanent condition whereby the nerves that supply the muscles of the arm are injured as a result of birth complications."  Harrison v. United States, 233 F. Supp. 2d 128, 130 (D. Mass. 2002)

C.F.R. § 404.1508. The Plaintiff has the burden to prove that she suffers from a severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987).

The Plaintiff argues that the ALJ failed to consider the "radicular symptoms" and headaches caused by her spinal disorders in determining her severe impairments. (Dkt. No. 15 at 20.) The ALJ found her spinal disorders to be a severe impairment. (R. 149.) "Symptoms" are defined as a Plaintiff's "own description of [their] physical or mental impairment." 20 C.F.R. §§ 404.1528, 416.928. By the definition of symptoms given by the regulations, a symptom cannot be an impairment. The ALJ properly accounted for her "radicular symptoms" and headaches by finding her spinal disorders to be a severe impairment.

The Plaintiff argues that the ALJ failed to consider her pelvic pain in determining her severe impairments. (Dkt. No. 15 at 20.) The pelvic pain the Plaintiff complained of was treated by Christopher Accetta, M.D., on October 21, 2011 by performing a laparoscopic surgery. (R. 923-24.) On January 3, 2012, the Plaintiff had a post-operative examination with Dr. Accetta. His notes indicated the Plaintiff was "doing well. denies problems. [p]ain resolved." (R. 1049.) Dr. Accetta went on to state that her "[p]ain before surgery is resolved. [Plaintiff] released from care for this issue." (R. 1050.) This does not meet the definition of a severe impairment. The ALJ's Step Two analysis of the Plaintiff's severe impairments is supported by substantial evidence, and this court recommends the ALJ's decision be affirmed.

### 3. The ALJ's Assessment of the Plaintiff's Credibility

"The determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her

> threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig, 76 F.3d at 593, 595.  Factors relevant to assessing a claimant's symptoms apart of objective medical evidence include "daily activities," "[t]he location, duration, frequency, and intensity of…pain or other symptoms," "[p]recipitating and aggravating factors," medications, and frequency.  20 C.F.R. § 404.1529(c)(3).  The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence."  Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible" (R. 152).  In discussing the Plaintiff's credibility, the ALJ specifically cited medical records that indicated "only mild symptoms related to her back and neck pain and radiological reports do not show significant pathology." (Id.) (citing Ex. 19F, Ex. 23F, Ex. 30F).  The ALJ's citation to objective medical evidence, the radiological reports (R. 817-19), combined with her medical records (R. 836-39, 927-28), is evidence the ALJ properly performed his role to weigh her statements against medical evidence.  The ALJ noted that the Plaintiff attended the hearing in a wheelchair, but the wheelchair had never been mentioned anywhere in the Plaintiff's medical records.  (R. 152.) The ALJ cited Exhibit 37F (R. 980-989), which are medical records from Dr. Patel dating from March 26, 2012 through June 4, 2012, as further evidence weighing against the Plaintiff's credibility that she needed a wheelchair.  Those records show the Plaintiff had full motor abilities in her legs, but suffered from radicular left leg pain as a symptom of her back impairment.  (Id.) The ALJ specifically cited that the Plaintiff "cares for her three children, does some cooking and

shopping, drives, and performs some household chores." (R. 152.)  The ALJ relied on Exhibit 8E, a "Function Report" filled out by the Plaintiff, to support her ability to perform daily activities.  (R. 399-404.)

In arguing that the ALJ erred by finding the Plaintiff not fully credible, the Plaintiff cites to a few specific medical records that she argues contradict the ALJ.  (Dkt. No. 15 at 21.)  The ALJ must weigh the evidence and resolve conflicting evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).  This court cannot reweigh the evidence. Craig, 76 F.3d at 589.  The Plaintiff's citations show that there was conflicting evidence.  They do not show that the ALJ's decision lacks substantial evidence.

The Plaintiff then attacks the Function Report, cited by the ALJ to support his conclusions regarding the Plaintiff's daily activities.  (Id. at 21-22.)   In the Function Report, the Plaintiff indicated she could perform the tasks described by the ALJ even though the report contains limitations of her abilities as well.  The ALJ's reliance on the Function Report and the Plaintiff's argument that the ALJ did not fully consider the report both beg the question at issue before the ALJ of whether the Plaintiff was credible in describing her impairments and symptoms. This court finds that the radiological tests and medical evidence cited by the ALJ provide substantial evidence for his credibility finding.  His finding was further supported by his analysis of the Plaintiff's need, or lack thereof, for a wheelchair.  This court finds that the ALJ's finding that the Plaintiff was not "fully credible" is supported by substantial evidence, and recommends the ALJ's decision be affirmed.

### 4.  The AJC's RFC Assessment

The ALJ's RFC assessment is supported by substantial evidence.  The Plaintiff argues that the ALJ's RFC assessment is "inconsistent with the overwhelming body of evidence." (Dkt.

No. 15 at 23.) Notably, in the nearly two pages of argument which is not double spaced, the Plaintiff only cites to the record twice. (Id. at 24)  These two citations are to two GAF scores,[5] which courts have found to be "'not dispositive of anything in and of [themselves]' and [have] no direct legal or medical correlation to the severity requirements of social security regulations." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (quoting Oliver v. Comm'r of Soc. Sec., 415 Fed.Appx. 681, 684 (6th Cir.2011)).  The Plaintiff argues the ALJ did not account for the Plaintiff's pelvic pain. (Id. at 23.)  As discussed *supra,* the ALJ's assessment of the Plaintiff's severe impairments excluding pelvic pain is supported by substantial evidence because medical records reflected her pain was resolved.  The Plaintiff's argument includes several general statements about what the Plaintiff's RFC should be but does not contain any support from the record or the law to support her conclusory statements. (Dkt. No. 15 at 23-24.)

To support his RFC analysis the ALJ methodically discussed each of the Plaintiff's impairments and the evidence in the record concerning that impairment.  The ALJ specifically discussed the Plaintiff's spine disorders, calcaneus fracture in her left heel, Erb's palsy, and mental impairments (R. 152-154.)  Contrary to the Plaintiff's argument, the ALJ specifically accounted for the Plaintiff's Erb's palsy in the RFC assessment.[6] (R. 154.)  The ALJ's RFC assessment is supported by substantial evidence, and this court recommends the ALJ's decision be affirmed.

---

[5] "A GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (internal quotation marks omitted.)

[6] The ALJ stated "I restricted the claimant to sedentary work and provided her with a sit/stand option to prevent aggravation of back and neck pain and to account for lifting limitations related to Erb's palsy." (R. 154.)

**Recommendation**

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be AFFIRMED,

IT IS SO RECOMMENDED.

July 27, 2015

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE